BALL & SOCKET FASTENER CO. v. PATENT BUTTON CO

(Circuit Court, D. Connecticut.   March 13, 1907.)

No. 1,169.

PATENTS—CONTRACTS—CONSTRUCTION—SALE OF PATENTS AND INVENTIONS.

A contract by which defendant transferred to complainant all of its rights in certain patents and in inventions for "separable fasteners of the kind hereinafter defined but no others" construed, and *held* to cover only separable fasteners of the snap variety, in which the resiliency is in the socket and not in the stud or post; it being shown that there are two distinct types, of which that is the distinguishing feature, and that all of those covered by the patents or identified by the contract were of the former type.

In Equity.   Bill demanding specific performance of certain portions of a contract, and, that having been granted, for further relief.

Donald Campbell, for complainant.

Bristol, Stoddard, Beach & Fisher (John K. Beach and Samuel H. Fisher, of counsel), for defendant.

PLATT, District Judge.   The preamble of the agreement in suit shows that the Patent Button Company had certain rights under the Shorey patents and in any "improvements upon the inventions described in said patents," and that said inventions for separable fasteners had no relation to the "fixed buttons made and sold by the Patent Button Company," but did relate to the "separable fasteners made and sold by the Ball & Socket Fastener Company."   The agreement then turns over to the present complainant all rights in the Shorey patents (paragraph 1), waives all rights to the present or future inventions by Shorey (paragraph 2), and all rights in inventions for "separable fasteners of the kind hereinafter defined but no others" (paragraph 3).   Going to paragraph 10, we find the "kind" defined in these words:

"The said term 'separable fasteners' is now intended, and shall always be understood, to mean separable fasteners and no others that are now made and sold by the Ball & Socket Fastener Company, and  *  *  *  described in the aforesaid Shorey patents now existing, viz., Nos. 345,930 and 352,271, and also  *  *  *  described in letters patent to Clark M. Platt and numbered 181,979, and also such  *  *  *  as may hereafter be assigned  *  *  *."

None having been assigned, the last clause of the definition is immaterial.

It is obvious that the agreement has to do exclusively with separable fasteners of the snap variety, because fixed buttons of defendant's manufacture are referred to in the preamble, and the parties could not have imagined that the term "separable fasteners," especially when connected with the Shorey and Platt patents, could be construed as referring to fixed buttons, hooks and eyes, corset clasps, or any other article not endowed with the peculiar function discovered in the patented structures. The evidence shows that separable fasteners of the snap variety were, at the time the agreement was made, divided patentably and mechanically into two plainly distinguished kinds or classes.   One kind had as a distinguishing feature a resiliency in the cup or socket; the other kind was equally distinguishable by a resiliency in the stud or ball.   The

trade, with the brevity and terseness which a business life enforces, divided them into those with "spring posts" and those with "solid posts." The two varieties were being produced in large quantities, but some makers brought out one kind, and other makers the other kind. Separable fasteners which got the snap from a spring post or stud were much more expensive than those which obtained it from a spring socket. No concern was then making both kinds, and the complainant had confined itself absolutely to resilient socket fasteners, although it controlled a patent relating to the other kind.

The agreement in suit is also confined, specifically and categorically, to turning over only the patents in which the Patent Button Company had rights, and which related to the kind the complainant was then making, and any later patents relating to the same kind, and to clench the matter and make assurance doubly sure, added words which are especially adapted to emphasize the purpose in mind. It almost seems as if "coming events" must have "cast their shadow before" at the moment when the defendant insisted upon the insertion, and reinsertion, and insertion again, of those words of exclusion—"but no others," "and no others," "no others."

Complainant says that because the parties to the agreement were in distinctly different commercial channels it is probable that defendant intended to give up all it had and all which might come to it in the general art which complainant's manufacture covered. That argument might have appealed to the defendant when the contract was under discussion, but the contract as written shows that it was either not presented at all or was ineffective. The patentable and mechanical distinction between the spring post and rigid post fasteners is a strongly marked and important one. It was in the minds of the parties when the agreement was made, and obviously the White patents, Nos. 691,222 and 692,953, belong to the kind where the resiliency resides in the stud, and are thereby distinguished from the kind referred to in the contract, where the resiliency resides in the post. Infinite variations might be applied to either type, but the central controlling mechanical distinction would remain.

Let the bill be dismissed.